## HOYT v. HORNE.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE DISTRICT OF MASSACHUSETTS.

No. 336.   Argued April 26, 27, 1892. — Decided May 16, 1892.

The machine manufactured under letters patent No. 347,043, issued August 10, 1886, to John H. Horne for "new and useful improvements in rag engines for beating paper-pulp" is an infringement of the first claim in letters patent No. 303,374, issued August 12, 1884, to John Hoyt, for a rag engine for paper making.

Whether it infringes the second claim in Hoyt's patent is not decided.

THE court stated the case as follows:

This was a bill in equity for the infringement of letters patent No. 303,374, issued August 12, 1884, to John Hoyt, for a rag engine for paper making. "This invention," said the patentee in his specification, "relates to engines for beating rags and similar fibrous material into pulp for the manufacture of paper. In these machines a beater-roll set with knives around its periphery is used, in combination with a bed-plate also set with knives, the said parts being placed in a tank or vessel in which a constant circulation of the material to be pulped is maintained.

"Heretofore ordinarily the material has been circulated horizontally around an upright partition termed a ' mid-fellow,' and the beater-roll and bed-plate have been placed in the alley or channel between this mid-fellow and one side of the tank. The beater-roll lifted the material over a sort of dam, (termed a ' back-fall,') and the material then flowed by the action of gravity around the mid-fellow and entered again between the beater-roll and the bed-plate. It has, however, been proposed to dispense with the mid-fellow and have the material turned under the back-fall and bed-plate. In either case, however, the circulating force is that of gravity due to the piling up of the liquid or semi-liquid on the side of the back-fall opposite from the beater-roll. Consequently the flow is comparatively feeble, and it is necessary to use a large quantity of water in order to prevent the fibre in suspension from depositing. In the present invention a much more rapid and vigorous circulation is maintained. The beater-roll is placed at one end of the vat, which is of a depth sufficient to contain it, and the other part of the vat is divided by a horizontal partition or division, which extends from the beater-roll nearly to the other end. The material to be pulped is carried around by the beater-roll, and is delivered into the upper section above the partition. It flows over the partition, then passes down around the end of the same, and returns through the lower section of the vat to the beater-roll. The bed-plate is placed at the bottom of the vat under the beater-roll. The beater-roll not only draws in the material, creating a partial vacuum in the lower section of the vat, but delivers it into the upper section with considerable force, impelling it forward very rapidly. By the aid of this more rapid as well as more vigorous circulation not only is the material returned more quickly, and therefore acted upon more often by the beater-roll in the same time, but it may be worked with a much less quantity of water, and thereby very important advantages may be secured. These advantages are, first, in the improved quality of the product, for when a considerable body of the fibrous material is drawn between the knives the different pieces are rubbed together and thus disintegrated without

destroying the length and felting quality of the fibre, whereas when the pulp is thin the pieces are ground individually, as it were, between the knives, and the integrity of the fibre in large measure destroyed; secondly, in the greater quantity of pulp which can be prepared in a medium of given size, owing to the larger proportion of fibrous material in the charge; and, thirdly, in avoiding the liability of the fibrous material depositing out of the liquid and lodging in the channels. . . .

"The operation of the engine is as follows: The beater-roll and bed-plate knives being adjusted properly, the vat is filled with the rags or fibrous material to be pulped and the proper quantity of water. The beater-roll being revolved at the proper speed — say, for a roll four feet in diameter, at the speed of one hundred and twenty revolutions per minute — the rags and liquid are drawn between the knives, are carried up by the beater-roll, and thrown over the edge of the plate P. They flow around the partition N with considerable velocity and return again and again to be acted upon by the knives. The roll is revolved until the pulp is properly reduced.

"Modifications may be made in details of construction without departing from the spirit of the invention, and parts thereof can be separately used if desired."

The claims alleged to have been infringed were as follows:

"1. The improvement in beating rags to pulp in a rag engine having a beater-roll and bed-plate knives, consisting in circulating the fibrous material and liquid in vertical planes, drawing the same between the knives at the bottom of the vat, carrying it around and over the roll and delivering it into the upper section of the vat, substantially as described.

"2. A rag engine for paper-making, comprising the vat, the beater-roll mounted on a horizontal shaft in one end of the vat, and the horizontal partition dividing the body of the vat into an upper and a lower section or passage, the fibrous material and liquid being carried from the lower section between the knives and delivered over the top of the beater-roll into the upper section or passage, substantially as described."

The device employed by the defendant was manufactured

under letters-patent No. 347,043, issued August 10, 1886, to John H. Horne, the defendant. With relation to the peculiar feature of his invention he stated in his specification as follows: "One great difficulty hitherto in the construction of these engines, whatever may be the path of travel given to the material contained in them, consists in the fact that the various fibres or bunches of fibre, after being placed within the engine, maintain concentric paths of movement with respect to each other. Thus a piece of stock located near the sides of the tub, or one placed near the mid-feather, will continue to travel in concentric paths until the engine is emptied, except in case manual labor is applied with a paddle to disturb their courses and compel them to deviate therefrom; hence it is obvious that the fibre travelling the more rapidly will be reduced more quickly, and the 'stuff' is of uneven quality. . . .

"The essential object of my invention is to effect a change in the course of the material in the engine automatically and obliquely to the longitudinal axis of the engine during each complete passage thereof around the tub, and thereby thoroughly mix the stock. Thus the particles which are nearest the mid-feather in one passage about the tub, and which therefore travelled the fastest, are directed and changed obliquely across the engine prior to their passage about the roll, and hence they will emerge and are located near the side. Such stock will consequently travel the slowest during the next passage around the tub, since it remains contiguous to the retaining-walls of the latter. This mixing and stirring of the material within the tub is effected primarily by the shape of the tub in cross-section, the width of which is equal to the active face of the roll, or thereabouts, the latter located in one end thereof. Thus to effect the desired change in the path of movement of the stock the proportions of the tub are altered, and in cross-section the two passages formed in the tub by the mid-feather are twice as deep as they are wide, or thereabout. Again, the stock is permitted to fill the entire width of the engine just prior to its entrance beneath the roll, and also immediately after leaving the same; hence the mid-feather terminates a

short distance before reaching the roll, and the stock, as it approaches the latter, as before premised, is permitted to spread out and fill the entire width of the engine. . . . . After the passage of the stock between the roll and the bed-plate, the particles composing it are directed upon and over the back-fall, which here extends entirely across the engine and in front of the roll, but contracts as it extends away from the latter, until it unites with the mid-feather, whence it is continued downward between the latter and the side of the engine to the bottom of the tub. This contraction of one-half its width again restores the mass of stock to a general vertical position, and the latter is so maintained until just prior to its return passage beneath the roll. Thus it will be evident that the fibres composing the material in process of being pulped cannot travel in continuous concentric paths of movement, but are changed and forced obliquely of the engine, whereby a thorough mixing of the stock is automatically effected by the spiral motion imparted to it both before and after leaving the roll."

The case was heard in the Circuit Court upon pleadings and proofs, and a final decree entered dismissing the bill upon the ground that the defendant had not infringed the plaintiff's patent. 35 Fed. Rep. 830. From this decree the plaintiff appealed to this court.

*Mr. Philip Mauro* and *Mr. Anthony Pollok* for appellant.

*Mr. Frederick P. Fish* (with whom was *Mr. W. K. Richardson* on the brief) for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

The engine in ordinary use by paper makers for the reduction of rags to pulp prior to the invention in question consisted of a tub about fourteen feet in length with straight sides and semicircular ends. Through the centre of this ran a vertical partition called the mid-feather, extending lengthwise of the tub, and with sufficient room between the ends of

the partition and the ends of the tub to allow the pulp to pass around from one side of the tub to the other. Midway of the tub and between the mid-feather and one side was a wheel or beater-roll, armed with knives, placed longitudinally upon the periphery of the wheel. Beneath the roll were corresponding knives in the bed-plate, and by the revolution of the wheel the rags were drawn between these knives and reduced to pulp. At one side of the roll the bottom of the tub was curved upwards forming a ridge or dam, termed a back-fall, about four inches high extending across the channel parallel with the roll. The beater-roll revolved away from the top of the back-fall, and the material being lifted by the rotation of the roll to the top of the back-fall, slid down the incline by gravity, which was the only force acting to cause a flow of nearly thirty feet, from the back of the beater-roll around to the front of it again. The speed of the pulp was thus necessarily very slow.

1. The novelty and patentability of the Hoyt patent were not denied, though two prior patents were referred to for the purpose of limiting its claims. The Umpherston engine was patented in England in April, 1884, a few months before the Hoyt patent was issued in this country. This machine differs from the old tub only in the fact that the mid-feather runs horizontally instead of vertically, and the return passage or channel for the pulp is underneath instead of alongside of the channel containing the beater-roll. Apparently the only advantage which it possesses over the old one is in economy of floor space.

The Cooke engine, patented in England in 1880, is a machine of the type known as disk-grinders, and is not a beating engine of the type of the machines involved in this suit. It has no beater-roll, the grinding being done by two disks at the end of the tub between which the pulp is drawn in at the centre of the disks, and works its way outward to the periphery between the grinding surfaces. It seems to us to have little bearing upon the present case except in the fact that the grinding mechanism is located at the end of the tub instead of in the centre.

The Hoyt engine differs from the old tub in ordinary use

in two or three important particulars. First, the beater-roll is located at the end of the tub, instead of in the centre, having in this particular a certain resemblance to the Cooke machine; second, the mid-feather runs horizontally instead of vertically, a feature in which it resembles the Umpherston engine; and, third, the beater-roll extends across the whole width of the tub, and its revolutions are toward instead of away from the top of the back-fall or dam. The result of this is such a greatly increased speed in the flow of the pulp that it is said to be brought in contact with the knives twelve times as often as was possible in the old tub or engine.

The circulation of the material around the roll in vertical planes is the salient feature of the Hoyt invention, and its utility is shown in its general adoption by paper makers.

2. The main question in the case is that of infringement. In the defendant's engine the beater-roll is also located at the end of the tub and extends across its entire width; the top of the back-fall or dam also extends across the entire width in front of the beater-roll, but narrows at one side as it descends to the bottom of the tub to one-half of its width. The mid-feather is made vertical instead of horizontal, so that the pulp after it leaves the dam circulates in a horizontal instead of a vertical plane; but as it returns to the beater-roll it passes back under the dam, spreading out to the entire width of the tub, and is taken up by the beater-roll precisely as in the Hoyt patent. It is insisted by the defendant in this connection that there is no infringement of the first claim of the Hoyt patent, since the pulp is not circulated "in vertical planes," nor is it delivered by the beater-roll "into the upper section of the vat," as specified in that claim. Literally it is not. A technical reading of the specification undoubtedly required that the mid-feather should run horizontally instead of vertically; but the object of this was that the pulp should be received and delivered by the beater-roll along its entire length, viz.: across the entire width of the tub, and this is accomplished in the same way in both devices. In both engines the beater-roll revolves toward the top of the dam or back-fall, and a similar acceleration of speed is obtained. How

the pulp shall circulate at the other end of the tub is a matter of small consequence so long as it shall circulate in vertical planes at the point where it comes in contact with the roll.

An additional function is claimed for the Horne device in the fact that the pulp, falling as it descends the dam from a vertical to a horizontal plane in a kind of torsional current, is more thoroughly mixed than in the Hoyt device, where the pulp continues to flow in parallel lines from the time it is delivered by the beater-roll to the time it is received by it again. This may be true, and defendant's engine may be in this particular an improvement upon the other; but he has none the less succeeded in appropriating all that was of value in the Hoyt device, viz.: the beater-roll at the end of the tub, extending across its entire width, and the circulation of the pulp in vertical planes at the only point where such circulation is of value. The substitution of a vertical for a horizontal mid-feather at the inoperative end of the tub is merely the use of an old and well known mechanical equivalent, and obviously intended to evade the wording of the claims of the Hoyt patent. *Winans* v. *Denmead,* 15 How. 330. Indeed, the ingenuity displayed in this evasion is only equalled by the ingenuity with which it is concealed in the specification of the defendant's patent, and the function of a more thorough mixture of the pulp put forward as the salient feature of the invention. The actual intent to evade is the more manifest from the fact that Horne, under a contract with the plaintiff, made seventeen machines according to the plaintiff's patent, but owing to some disagreement as to the quality of the work done by him, the contract was terminated, and Horne began the production of his own engines, and subsequently took out a patent for his invention.

We are, therefore, of opinion that defendant's machine is an infringement of the first claim of the plaintiff's patent. Whether it be an infringement of the second claim admits of more doubt, since that contemplates a horizontal partition dividing the body of the vat into an upper and lower section or passage. We do not, however, find it necessary to pass upon this question.

The decree of the court below is, therefore,

*Reversed, and the case remanded with instructions to enter a decree for the plaintiff upon the first claim, and for further proceedings in conformity with this opinion.*