INTERSTATE BAKERIES v. GENERAL BAKING CO.

No. 2913.

United States District Court
D. Kansas, Second Division.

Oct. 6, 1948.

George Siefkin (of Foulston, Siefkin, Schoeppel, Bartlett & Powers) and Carl T. Smith, both of Wichita, Kan., and A. Trevor Jones, of Chicago, Ill., for plaintiff.

Henry V. Gott (of Carey, Lilleston, Spradling & Gott, of Wichita, Kan., and D. A. Woodcock and Norman N. Schuttler, both of New York City, for defendant.

MELLOTT, District Judge.

Plaintiff seeks a permanent injunction against the making, use, sale or lease by the defendant of a device alleged to infringe two patents owned by it for automatic machines designed for the production of cinnamon rolls and other bakery sweet goods. An alleged infringing machine was used by the defendant in this district, at and prior to the filing of the complaint, and this court has jurisdiction. Money damages are not sought.

The record is quite voluminous. Learned counsel for both sides, however, have been very helpful to the court: first, in admitting many of the basic facts; second, in making intelligent use of the Rules of Civil Procedure; and finally, in filing well-prepared briefs. It is a matter of regret by the court that the pressure of other work has resulted in some delay in getting the case decided.

As may be gleaned from an examination of the findings hereinafter set out, the case, after being fully tried, briefed and submitted, was reopened for the purpose of receiving additional evidence. Inasmuch as the evidence so received, under the pleadings as amended, pertains to issues not discussed in the first briefs, additional briefs and suggested findings of fact were filed. The court has followed the same plan in

the preparation of its findings, sacrificing, to some extent, chronology and continuity, and will do likewise in its opinion. From the whole record the court makes the following:

Findings of Fact.

1. Plaintiff is a Delaware corporation and defendant is a New York corporation. Both parties have bakery plants in several of the principal cities in the United States. The defendant has a regular and established place of business at Hutchinson, Kansas.

2. The defendant, at its bakery plant in Hutchinson, Kansas, makes cinnamon rolls and other baker sweet goods, in the production of which it has used, prior to the institution of this suit and within six years next preceding, and at the time of the trial was still using, an automatic machine with an oblique roller which, it is charged by the plaintiff, infringes its patents. The defendant has similar machines at other of its plants, namely, one each at Toledo, Ohio; Buffalo, New York and Worcester, Massachusetts. Defendant had notice of the patents in suit prior to the bringing of the suit and was offered a license under them for its own use; but the offer was rejected.

3. Plaintiff is the owner of Fonken Reissue Patent 22,399, granted December 7, 1943, upon application for reissue filed August 22, 1942, (the original patent being 2,217,896, issued October 15, 1940, on application filed November 10, 1939), and Cohen, et al. (hereinafter Cohen) patent No. 2,383,-774, issued August 28, 1945, on application filed December 13, 1943, (as a division of application filed February 6, 1942, upon which patent 2,352,617, dated July 4, 1944 was issued). Quik-Seal Inc. sought and obtained a license from plaintiff to manufacture and sell machines under the Fonken Patent. (Pl.Ex. 70, Deft.Ex. I, J and K, Tr. 149).[1]

4. Plaintiff, which is seeking an injunction but not money damages, relies for its charge of infringement upon Claims 7, 11, 13 and 14 of the Fonken reissue patent and upon Claim 7 of the Cohen Patent, which claims will be hereinafter set out.

5. The original Fonken Patent shows a machine having an endless conveyor belt carrying a dough strip from sheeter rollers and a pair of oblique driven rollers, of which the first roller coils the dough strip and moves it around and beyond the distal end of the roller, the second roller changing the direction of the elongated coiled dough strip and moving it obliquely to the mid-portion of the conveyor. During the movement of the dough, water, edible oil and a sprinkling of cinnamon and sugar are applied mechanically. The coiled cylinder of dough moves forward on the conveyor and is severed into relatively short sections for baking. Under the Fonken Patent, all of the claims center around and are limited to a pair of oblique rollers or the equivalent thereof. (Pl.Ex. 61 and Deft.Ex. I).

6. Neither the original Fonken Patent nor the Reissue specifies the angle at which the first oblique roller is to be set or any means for varying the angle. The angle indicated on the drawings was approximately 64 or 65 degrees (compared with a transverse line at right angles to the movement of the conveyor). The Reissue added two new claims, 13 and 14, which were not in the original patent. Therein it is stated that the roller extends "substantially more nearly in the direction of movement of the conveyor than in a direction at right angles to said movement." (Pl.Ex. 70 and Deft. Ex. I, Tr. 57).

7. The hand method of making cinnamon rolls and other "sweet goods" consists primarily of taking a gob of dough, placing it on a work bench, stretching it out by the use of a rolling pin to a thin strip, brushing edible oil on it by the use of a brush, sprinkling a mixture of cinnamon and sugar and coiling it up by hand into a cylinder of dough, after which it is then cut by hand with a knife, scraper or squirrel-cage cutter. (Tr. 19, 160, 167, 226, 232). It is

[1] The references to exhibits, pages of the transcript, etc., shown in parentheses following some of the findings, merely indicate part of the evidence upon which the finding has been based. No effort has been made to make the citations complete or to refer to all of the evidence bearing upon any particular finding.

still being used in most of the bakeries of the United States. One reason the hand method has been continued in the making of "sweet goods" is because bakers have remained conscious of the fact that yeast-raised dough is continuously undergoing fermentation and, being a relatively fluid substance, has not been thought to be susceptible of being worked into rolled form by machines because of the undesirable punishment it would receive in such a process. It has been axiomatic in the trade that such dough should be handled as lightly and as little as possible. (Tr. 171).

8. Machines embodying the Fonken Patents have been, and, at the time of trial, were being, used successfully by plaintiff in at least nine of its bakery plants, these plants collectively producing, at the time of trial, between $3,000,000 and $4,000,000 worth of sweet goods per year. In addition, plaintiff's licensee, Quik-Seal, Inc., has sold machines made under the license to other bakeries to a value of approximately one half million dollars during the two-year period preceding the trial. Plaintiff's licensee, Quik-Seal, Inc., is prepared to meet the demand of the trade for such machines. (Tr. 148–158).

9. Plaintiff acquired the original Fonken patent from Fonken by mesne assignment from Fish Oven & Equipment Co., of Beloit, Wisconsin, and plaintiff, upon its acquisition, filed an application for Reissue signed by the inventor, Fonken, on the ground that the claims of the original patent were unduly limited, said original patent in addition to the oblique coiling roller having shown a second oblique roller extending in the opposite direction to the first oblique roller for shifting the coiled dough strip back to the mid-portion of the conveyor preliminary to cutting, and the original claims having been limited to either such a second oblique roller or to equivalent means for changing the direction of the coiled dough strip after coiling. The reissue application asked for a claim which was not limited to the second oblique roller or equivalent means for shifting the position of the coiled dough strip after coiling. (Tr. 230, 239, Pl.Ex. 68, 69 and 70).

10. The description of the coiling roller angle as "substantially more nearly in the direction of movement of the conveyor than in a direction at right angles to said movement" was first inserted by amendment of the Reissue application on May 21, 1943, (more than two years after the issuance of the original Fonken Patent on October 15, 1940), and afterwards in Claims 13 and 14 by amendment of October 21, 1943. Fonken did not file any original or supplemental oath referring to Claims 13 or 14. Approximately a week before the trial of this case a supplemental oath, referring to said patent and claims, was transmitted to the patent office, which refused to accept it. Fonken inadvertently, and by accident and mistake, had refrained from telling the attorney, who represented him in securing his original patent, that he had tried the machine with only one oblique roller and the attorney had never seen the machine with but one oblique roller. Fonken's neglect to explain to his then attorney that his machine with a single oblique coiling roller should be claimed broadly as such was not fraudulent nor was that done with intention to deceive. (Pl. Ex. 70, Tr. 249–251).

11. The experimental Fonken machine was tried out for about a week at a bakery; but since it was an experimental machine and belonged to the Fish Oven and Equipment Co., it was returned to the secret experimental room in the Company's factory. At that time the experimental machine had the two oblique rollers on it and it was never without the two oblique rollers until after its purchase by plaintiff. No other machine like it was built by Fonken or the Fish Company. (Tr. 83, 115, 175, 232–233, 240–241).

12. The application for Reissue of the Fonken Patent was filed one year, 11 months and 7 days after the date of the issuance of the original Fonken Patent. Some of the "special circumstances" relied upon by plaintiff herein as justifying the delay in filing the application for Reissue includes preoccupation of the Fish Oven and Equipment Co., the then owner, and its president with other matters, the desire of the Fish people to have Fonken perfect for it a development for twisting dough, which had been suggested by Fonken, and the occurrence of the World War with the

attendant difficulty of getting machine parts and materials for building machines. The application for Reissue was filed at the behest of the plaintiff on August 22, 1942, shortly after it acquired, on or about July 27, 1942, the Fonken Patent and the experimental machine which Fonken had built for the Fish Oven and Equipment Co. (Pl.Ex. 69 and 70).

13. Shown below, exclusive of formal parts and signature, is the oath of Fonken signed August 13, 1942, and transmitted to the Patent Office in connection with the application for a Reissue patent.

"Martin E. Fonken, the above-named petitioner, being duly sworn, deposes and says that he does verily believe himself to be the original, first and sole inventor of the improvements set forth and claimed in the foregoing specification and for which improvement he solicits a patent; that deponent does not know and does not believe that said improvement was ever known or used before his invention or discovery thereof; that deponent is a citizen of the United States of America and resides at Beloit, in the County of Rock and State of Wisconsin; that deponent verily believes that the Letters Patent referred to in the foregoing petition and specification and herewith surrendered are inoperative for the reason that the specification thereof is insufficient, and that such insufficiency consists particularly in failure to claim the invention as broadly or in as many varied aspects as deponent was entitled to claim it in view of the prior art; and deponent further says that the errors which render said Letters Patent so inoperative arose from inadvertence and without any fraudulent or deceptive intention on the part of deponent; that the following is a true specification of the errors which it is claimed constitute such inadvertence relied upon:

"The claims are unduly limited to a pair of oblique rollers or equivalent means for operating upon the dough strip twice in a spiral or oblique direction, whereas the subcombination disclosed by applicant of a single oblique roller to act upon the continuous dough strip was new and useful. A principal object of the second oblique roller, shown by applicant, is to return the coiled dough strip to approximately the longitudinal center line of the conveyor, where it may be readily severed by the rotating blade knife, and this result might be accomplished by other means while still employing applicant's principal invention of the intermedially coiling action on the continuous strip, as, for example, by a single oblique roller.

"The claims and particularly claims 7, 10, 12, 13, 14, 16 and 19, are not limited to an elongate strip of dough adapted to extend continuously from where it is in flat form to where it is in coiled form, but these claims are, on the other hand, unnecessarily limited to the two obliquely arranged rollers shown in the illustrative apparatus disclosed. One of applicant's principal and important contributions to the art in this disclosure is an apparatus for treating dough for bakery purposes including means for producing an elongate strip of dough of substantially uniform width and thickness and moving this strip continuously over an elongate conveyor, while intermedially engaging the strip by a roller oblique to the direction of movement of the conveyor and rotating, where engaging the dough, in a direction opposite to the movement of the dough to coil the dough strip intermedially on an axis extending transversely to the direction of movement of the conveyor. This concept, which was new and useful in the art, is herein more particularly referred to, and the inclusion of the second oblique roller in the claims is not necessary to confer patentability thereon.

"For the foregoing reasons, the specification and claims of the original patent fail to afford adequate protection to the invention, and said errors occurred from the fact that deponent inadvertently omitted to explain to his then attorney that a principal element of his invention was the means for treating a dough strip extending continuously from where it is in flat form to where it is in coiled form and coiling it intermedially transversely to its longitudinal direction of movement whereby the coil is sealed by said lateral rolling movement, and that the invention was of that breadth and scope and was not limited as by the claims of the original patent.

"Until recently pointed out to him by others, deponent supposed that said insufficient, defective and limiting expressions in the specification and claims did not restrict the scope of the claims in the sense of rendering them inoperative to afford him full protection for his real invention, but deponent now is informed and believes, and therefore states, that said insufficient, defective and limiting expressions in his specification and claims do restrict the scope of the claims and render them inoperative to afford him the full protection for his real invention, and deponent therefore prays that this reissue application be allowed." (Pl.Ex. 70, Page 23).

14. Shown below, exclusive of formal parts and signature, is the oath of plaintiff's patent attorney, signed May 18, 1943, and transmitted to the Patent Office in connection with the application for a Reissue patent.

"A. Trevor Jones, being first duly sworn, deposes and says as follows:

"I have been patent attorney for Interstate Bakeries Corporation (the present owner of the above-entitled patent), and its predecessors for about ten years.

"On July 27, 1942, said Interstate Bakeries Corporation purchased the entire right, title and interest in Fonken patent No. 2,217,896, dated October 15, 1940. Upon study of said patent, I found it to be defective and insufficient so as to be wholly inoperative to carry out the scope and effect of the patent which the disclosure of said patent and the breadth of novelty thereof in the light of the prior art justify. Accordingly, on August 11, 1942, I wrote Martin E. Fonken, the inventor of said patent at Beloit, Wisconsin, asking for an appointment to see him with reference to a reissue application of his patent.

"Mr. Fonken who was a railroad man traveling as a railroad brakeman at that time, agreed to meet me at Sturtevant, Wisconsin, and I did meet him on August 13, 1942, at which time I pointed out to him the said defects and insufficiencies, as to which Mr. Fonken agreed with me and set forth, together with the errors by which said defects arose, in his oath to said reissue application Serial No. 445,780, filed August 22, 1942.

"Upon inquiry as to Mr. Fonken's present whereabouts, I am now informed by Mr. Fonken's former associates in Wisconsin that Mr. Fonken has gone to California to work for one of the aircraft companies. It would be difficult, if not impossible to take up this matter of a further affidavit or oath from Mr. Fonken without making a trip out to California to try to locate him, and to have a talk with him, and in lieu thereof, I am making this affidavit to state the facts with reference to when and how the alleged defects and insufficiencies in the original Fonken patent were first discovered, which facts are within my own personal knowledge, and are stated as above set forth." (Pl.Ex. 70, Page 39).

15. The original Fonken Patent showed two rollers: The oblique coiling roller and a second and shorter oblique roller, the latter so placed as to guide or change the direction of the coiled dough and keep it from falling over the side of the conveyor. The two rollers are referred to in the patent in this language:

"It is desirable to straighten the above described helical layer so that it will be longitudinally disposed in an approximately straight line along the roll of dough before the roll is cut into the small pieces for baking. In order to do this, the rolled mass is warped by a second corrugated roller 109. This latter roller is disposed oblique to the line of travel of the apron and extends partly across the apron to approximate center of the width thereof from the side of the table upon which the shield or deflector 108 is mounted." (Pl. Ex. 48-C and 70, following Page 31 (Page 4, Line 7 of the original patent).

16. Claims 8 and 17 of the original Fonken Patent are as follows:

"8. Apparatus of the kind described embodying a traveling conveyor adapted to move a flat dough strip in a longitudinal direction; a roller rotatable in a direction opposed to the direction of travel of said conveyor, said roller disposed obliquely over an edge of the conveyor and adapted to coil the dough strip into an elongate

helical roll that is discharged from said roller adjacent a margin of the conveyor; and a second roller adapted to move the elongate roll of dough to the midportion of the conveyor."

"17. Apparatus of the kind described embodying an elongate table; a conveyor traversing said table in a longitudinal direction thereon; means for delivering a flat dough strip to said conveyor; means adapted to spirally roll the dough strip and move the same in a direction oblique to the travel of the conveyor; and means adapted to change the movement of the coiled dough in an oblique direction opposite the first oblique movement." (Pl. Ex. 48-C and 70).

17. Claims 8 and 17 of the original Fonken Patent were carried forward into and became Claims 7 and 11 of the Fonken Reissue patent. Claims 13 and 14 of the Reissue—not included in the original Patent—are as follows:

"13. Apparatus of the kind described embodying an elongate conveyor; means for moving the conveyor in a longitudinal direction; means for continuously feeding an elongated flat dough strip to said conveyor; an elongate roller obliquely disposed over said conveyor, said roller extending substantially more nearly in the direction of movement of the conveyor than in a direction at right angles to said movement and adapted to contact the dough strip intermedially of the length of the dough strip and angularly to the dough strip; and means for rotating the roller in a direction opposed at its periphery where engaged by the dough strip to the direction of movement of the conveyor, to continuously coil the dough strip as it is fed by the conveyor and cause the coiled dough strip to move obliquely to the direction of movement of the conveyor where contacted by the roller while leaving the dough strip where it is being fed to the roller by the conveyor parallel to the direction of movement of the conveyor.

"14. Apparatus of the kind described embodying an elongate conveyor; means for moving the conveyor; means for continuously feeding an elongated flat dough strip to said conveyor; an elongate roll-er obliquely disposed over said conveyor intermedially of the length thereof and completely across said dough strip, said roller extending substantially more nearly in the direction of movement of the conveyor than in a direction at right angles to said movement and adapted to contact the dough strip intermedially of the length of the dough strip and angularly to the dough strip; means for rotating the roller in a direction opposed at its periphery where engaged by the dough strip to the direction of movement of the conveyor, to continuously spirally coil the dough strip as it is fed by the conveyor and cause the coiled dough strip to move obliquely to the direction of movement of the conveyor where contacted by the roller; and guide means including the conveyor for directing the movement of the coiled dough strip after it leaves the roller whereby the coiled dough strip may be thereafter severed into relatively short lengths for individual baking." (Pl.Ex. 48-A, 48-C and 70).

18. The earliest date any activity by the defendant in connection with the machine alleged to infringe occurred, was October 19, 1942, on which date defendant acquired an option to buy the controlling stock of Cinnamon Bun Machine Co., Inc., which owned rights in improvements later disclosed in Grimm et al. Patent 2,354,681, filed January 6, 1943, and issued August 1, 1944. The option was exercised on February 18, 1944. (Stip.Para. 8, Tr. 306, Pl.Ex. 72).

19. Morris Cohen, a graduate mechanical and chemical engineer, had been in the employ of plaintiff and its predecessor as Chief Engineer for approximately 15 years preceding the acquisition by plaintiff of the Fonken patent. After its acquisition Cohen and some of his associates attempted to modify the teachings of Fonken by including an oblique bracket within the vertical projection of the conveyor with a passageway under the bracket for the coiled dough, which would permit the dough to pass around and beyond the end of the shaft. Application for a patent was filed February 6, 1944, upon which patent No. 2,383,774 was granted August 28, 1945. The claim in this patent, which is relied upon by the plaintiff in this case, is Claim

No. 7 reading as follows: "7. In apparatus for continuously treating dough for bakery purposes, the combination with a support, of a conveyor belt arranged to travel on the support for moving a flat strip of dough thereon, a rotatable shaft having proximal and distal ends mounted on the support on opposite sides of the conveyor obliquely to the conveyor, a roller fixed on said shaft, said roller being in the path of the dough strip and extending more nearly in the direction of movement of the conveyor than at right angles thereto, the mounting for the shaft including a bracket extending within the vertical projection of the conveyor carried by the support at the distal end of the shaft extending obliquely in the opposite direction to the obliquity of the shaft and supporting the distal end of the shaft, driving means connected with the proximal end of the shaft for rotating the roller in a direction opposed at its periphery where engaged by the dough to the direction of movement of the conveyor whereby the dough is picked up and coiled angularly and somewhat longitudinally and is shifted sidewise on the conveyor in order to pass around and beyond the distal end of said shaft, the coiled dough extending in a direction which is more nearly that of direction of movement of the conveyor than at right angles thereto, and a passageway under said bracket for passing said coiled dough around and beyond the said end of the shaft, after being coiled by said roller, by the joint action of the rotating roller and moving conveyor." (Pl.Ex. 48-B, Deft. Ex. J and K, Tr. 78).

20. The prior art patent to Barker, British No. 208,197, of—1923 (cited in the Patent Office Proceedings) discloses, in a machine for treating dough, a pair of rollers set at an angle of approximately 18 degrees over an endless conveyor belt for carrying dough. The provisional specification designates the machine as "Improved Dough Molding and Shaping Apparatus for Molding and Shaping Pieces of Dough Preparatory to Making Bread and the Like." (Deft. Ex. L-1, Tr. 283-291, 314, 329, 335, 360-368, and 381).

21. Barker's coiling roller extends in a direction substantially more nearly at right angles to the direction of the movement of the conveyor than in the direction of such movement. It does not show a dough strip contacted intermedially of its length and it contains no disclosure or suggestion for running a continuous strip of dough. The endless conveyor belt or band was for the purpose of delivering pieces or lumps of dough "of appropriate size * * * placed, either by hand, or automatically from another machine", to a pair of squeezing rollers between which they pass. After being squeezed into ribbon form, the dough is then carried below the smaller roller and against the larger one "where, owing to the reverse direction of movement of the rollers, it is rolled up into scroll form, and gently pressed or squeezed (kneaded) while also moved endwise by the rollers and conveyor." (Deft. Ex. L-1).

22. A second prior art Barker Patent British No. 208,198 of 1923, was not cited by the Patent Office in connection with the applications which led to the issuance of the patents in suit. This patent refers to, and is referred to, by Barker No. 208,197; relates to the production of bread by the treatment of individual pieces or lumps of dough; and discloses a complicated system of circular and transverse conveyors in tiers, one above the other, with angular rollers disposed over the conveyors to push the lumps or pieces of dough off the conveyor and onto the conveyor next below. During the process an oblique roller is employed which coils and moves the dough beyond its distal end. (Deft. Ex. L-2).

23. Humble, prior art patent No. 318,554, of April 24, 1888, discloses a bread making machine showing a method for treating a continuous strip of dough, including an endless conveyor belt, sheeter rollers, rollers with horizontal axes, having oblique bevel edges for forming the dough strip into an elongated coil of dough and means for leading the coiled dough strip under the shaft of the rollers and along the mid-portion of the conveyor to a cutter which severs it into relatively short lengths for baking. (Deft. Ex. L-3, Tr. 291).

24. Kessler, prior art patent 745,018, granted November 24, 1903, relates to a bread making machine disclosing the use

of vertical idler rollers adapted to move a coil of dough angularly to the midportion of a conveyor. (Deft. Ex. L-4, Tr. 292).

25. Callow, prior art patent No. 1,176,-648, granted March 21, 1916, discloses a continuous conveyor belt and oblique rollers placed at an angle of about 70 degrees adapted to fold a piece of dough upon itself and move it along the conveyor. (Deft. Ex. L-5, Tr. 293).

26. Humble, Kessler and Callow, as well as Chase, Scruggs, Schroder and Barker British Patent 208,197, were considered by the Patent Office before the granting of the original patent to Fonken, and Barker, Humble and Kessler were reconsidered by it before the allowance of the Fonken Reissue. (Pl. Ex. 70, Deft. Ex. I).

27. Both of the patents in suit—viz., the Reissue Fonken Patent and the Cohen Patent—were issued after defendant had entered the field and expended money on machines like those shown in the Grimm and Linneman Patent No. 2,354,681 in reliance upon advice that such machines did not infringe the original Fonken Patent No. 2,217,896. The application for the Grimm-Linneman Patent was filed on January 6, 1943. On March 1, 1943, the defendant had completed its second cinnamon bun machine and began its use. The machines were substantially the same as the machine alleged to infringe, being similar in the sheeting rollers, the endless belt, the angle of the coil roller, and the location of the cutting knives. The claims of the Grimm and Linneman Patent, however, primarily cover "a roll shearing device comprising a pair of shear blades" mounted above the defined path of the dough at the end of the oblique roller. (Tr. 181, 305, 308, 358. Pl. Ex. 48-A, 48-B, Deft. Ex. "O").

28. The use of the machines manufactured and used by plaintiff and sold by its licensee substantially reduces the cost of making cinnamon buns as compared with hand operation in bakeries where large quantities of such goods are produced. (Tr. 44-47, 161).

29. A non-technical, general description of the accused device is a machine having an endless conveyor belt carrying a strip of dough from sheeter rollers forward against an oblique roller, set at an angle of approximately sixty degrees, the roller being supported at or near one of its ends at one side of the conveyor belt, the other end of the roller extending approximately across the belt and being supported by a framework near the forward end of the belt, at which point shears or a mechanism composed of co-operative shear blades, as more fully described in the Grimm and Linneman Patent, engage the dough "to swiftly shear through it with a substantially encompassing action." (Deft. Ex. "O". Pl. Ex. 45, 97, Tr. 97, 185-220, 359, 396).

30. The shears or cutting knives referred to in the preceding finding operate approximately ⅟₁₆ of an inch from the distal end of the coiling roller, severing the elongated coil of dough at that point while it is still traveling forward, substantially parallel to the coiling roller. The coil of dough at the moment of severence is parallel to the coiling roller and extends approximately an inch beyond (but not around) its distal end. Two vertical idler rollers, located near the distal end of the roller, serve to hold the dough strip in place and to prevent the severed portions from leaving the conveyor. The accused machine does not have "a second roller adapted to move the elongate roll of dough to the mid-portion of the conveyor", "means adapted to change the movement of the coiled dough in an oblique direction opposite the first oblique movement", nor guide means "for directing the movement of the coiled dough strip after it leaves the roller whereby the coiled dough strip may be thereafter severed." The oblique coiling roller of the accused machine rotates in a direction opposed to the direction of the movement of the conveyor and causes the dough strip to be coiled as it moves forward. The accused apparatus also includes a separate pick up conveyor belt adjusted laterally of the main belt upon which the sections of dough, after being severed, are carried forward for the purpose of being picked up and put into baking pans. The vertical axle rollers and the baffle plate near the distal end of the roller in the accused device collectively serve to prevent the severed pieces of dough from leaving the con-

veyor belt. (Pl. Ex. 45-A, 46-A, 47-A and 72. Tr. 127, 146, 375 and citations for the next preceding finding).

After the trial of the instant case had been concluded and briefs submitted, but before any decision had been reached or announced by the court, the deposition of Martin E. Fonken was taken October 20, 1947 in a case pending in the District of Minnesota, Fifth Division, involving the same patents now before this court, wherein plaintiff herein and Quik-Seal, Inc., are plaintiffs and Harry Moline, et al. are defendants. Therein Fonken made admissions somewhat inimical to the claims being made by plaintiff in the instant suit. Thereupon counsel for the plaintiff herein and therein promptly addressed a letter to this court under date of October 22, 1947, which the court has caused to be filed and which has been marked "Court's Exhibit X." Copies of the letter had been transmitted by counsel for the plaintiff to counsel for the defendant. Thereafter depositions of Floyd E. Eyster and others were taken in the Moline case on November 10, 1947. Defendant then filed a motion to reopen the instant case for the purpose of receiving additional evidence, particularly the depositions of Fonken and Eyster, upon which the court on December 1, 1947 entered an order, approved by counsel for both sides, pursuant to which the depositions and other evidence adduced in the Moline case were received in evidence in the instant case. The evidence so received is the basis of the findings hereinafter set out.

31. Early in January, 1939, Martin E. Fonken and Floyd E. Eyster had a discussion regarding the development of an automatic sweet roll machine at the plant of Keig-Stevens Baking Co. in Rockford, Illinois, where Eyster was then its plant maintenance engineer. Fonken, at that time, was working on the development of a dough twisting machine. The dough twisting machine was not a success and was never patented. (Fonken Dep. from Moline case, Page 37; Eyster Dep. from Moline case, Page 7).

32. Fonken explained to Eyster that he was planning to build an automatic sweet roll machine but that he didn't know just how he could make a device to curl the dough strip. Eyster told him he "would make that for him, with the understanding that he could use it on his machine and he said he would like to have it and would be glad to pay * * * [Eyster] part of what he could get out of it." (Eyster Dep. Page 7).

33. On or about January 26, 1939, a "Proof of Development" was signed by Eyster and five other employees of Keig-Stevens Baking Co. before a notary public, who was then Secretary of the company, which, exclusive of signatures and formal parts is, as follows:

"To Whom It May Concern:

"Be It Known that on the 26th day of January 1939 A. D. Floyd E. Eyster of Rockford, Illinois appeared before the witnesses whose signatures are affixed hereto, and exhibited a machine, in working model, conceived by said Floyd E. Eyster, and designed for the curling of Baker's Sweet Roll Doughs, bread, or any plastic, or pliable composition.

"The witnesses whose signatures are affixed hereto firmly and honestly state that their investigation into the development of the machine described in the body hereof, discloses that Floyd E. Eyster did conceive, develop, and perfect a working model of the machine described as:

"A device for curling bread or cake doughs by mechanical means, by the passing of a flat strip of dough of varied width or thickness, through an arrangement of rollers, so that the dough or material is curled by folding the edge of the strip into itself and rolling the dough over and over, emerging as a round curled roll ready for cutting into panning size baker's rolls. The result is accomplished by passing the dough strip through an arrangement of rollers, revolving in opposition to each other, power driven in synchronization with the movement of the dough strip. The rollers are covered with a material which forces the movement by the dough into the desired position, and are set at different angles, adjustable to meet desired conditions, mounted into a carriage or framework and operated by a gear arrangement.

"We do hereby certify that the device described above has on this 26th day of

January 1939, A.D. been exhibited before us, operated successfully, and demonstrated in accomplishing the desired result as set forth in the description above. The photograph attached hereto and made a part of this proof is of the demonstrated machine. (Dep. Moline case, Deft. Ex. A attached thereto).

34. The picture attached to the "Proof of Development" displays essentially the same combination and design of oblique rollers as shown by the drawings and description in the original patent, granted to Fonken October 15, 1940, on application filed by him on November 10, 1939. (Dep. Moline case).

35. On or about the 31st day of January, 1939, Martin E. Fonken, as party of the first part, and Floyd E. Eyster, as party of the second part, executed an agreement before four witnesses and a notary public, which, exclusive of signatures and formal parts, is as follows:

"To Whom It May Concern:

"Be it known that on the date affixed hereto Martin Fonken, hereinafter referred to as party of the first part, and Floyd E. Eyster, party of the second part, have entered into an agreement covering the disposition of the device described in the face of this agreement, as related herein.

"It is agreed that party of the second part has in his possession a device conceived and produced, or constructed by the party of the second part, and described in a sealed letter of protection produced by the party of the second part, before witnesses on the date of production of the device described in the body of this agreement.

"It is agreed that the device referred to in this agreement was conceived and produced in a working model by the party of the second part. Said device being an instrument; or machine; or tool for use in curling dough, either bread or cake dough, into the form for cutting into shape of a Baker's sweet roll. The process to which this device is applicable involves the taking of a flat strip of dough and passing it through two covered rollers, revolving in opposition to each other, at such an angle that the dough is curled, one fold over another, evolving as a curled roll finished for cutting into panning size. It is understood that this machine, while conceived for the described work, may be adapted to the curling of any doughy or plastic composition, and this agreement is to extend coverage to include any adaptions of the device to the curling of those compositions.

"It is further agreed that any improvement or change in design of the working model will not in any way invalidate the terms of this agreement. It is agreed that the process of curling rolls by mechanical means shall remain the property of the Party of the Second Part.

"The Party of the First Part agrees to act as agent of the Party of the Second Part, said party of the first part to negotiate for the acceptance of the plans and model by any Corporation, partnership, or individual for placement of the device in production, and on the market as a salable item, fully protected with the rights of the party of the second part unimpaired.

"It is further agreed that the party of the first part in consideration of the substance of this agreement may enter into any negotiations he may deem necessary to fulfill his part of the agreement. However, he is to protect at all times the interests of the party of the second part. It is agreed that the party of the First part will return to the party of the second part 1% (one per centum) of the listed sales price on each machine sold, in which the principle and method of curling rolls, which it is agreed remains the property of the second part, is used.

"This agreement has been entered into on the 31st day of January 1939 in the City of Rockford, County of Winnebago, State of Illinois before the Witnesses whose names are affixed hereto." (Dep. Moline case, Deft. Ex. B attached thereto).

36. Attached to the document set out in the preceding finding is an "Endorsement", signed by Fonken and Eyster and appearing to have been executed on January 30, 1939, which, exclusive of signatures and formal parts, is as follows:

"It Is Further Agreed that Floyd E. Eyster, the Party of the Second Part, extends exclusive rights to Martin Fonken, the

Party of the First Part, for the promotion and disposition of the device described in the Agreement to which this endorsement is attached and made a part. The rights extended to the Party of the First Part are for a period not to exceed twelve months from the date of Agreement. At the expiration of the twelve month period, it is agreed that if the device is not placed in production and made marketable, the Party of the First Part waives all rights and the Agreement becomes invalid, the device, all developments, and rights reverting to the Party of the Second Part."

37. On March 18, 1939, Martin E. Fonken, J. W. Wilkinson, and Floyd E. Eyster, as "First Parties" and Fish Oven & Equipment Co., a corporation, as "Second Party", entered into Articles of Agreement. The pertinent part of this document is quoted below:

"Whereas the First Parties have conceived and are now perfecting a certain device for use in curling dough into a form commonly termed a 'Baker's sweet roll', which said device is hereinafter referred to as an automatic sweet roll machine, and

"Whereas application for a patent upon said device, known as an 'Automatic sweet roll machine', is about to be filed with the United States Patent Department, and

"Whereas said First Parties, who have an unequal interest in said device, desire to have the Second Party manufacture and sell said invention.

"Now, Therefore, in consideration of one (1) Dollar and other good and valuable considerations, the receipt and sufficiency of which are hereby acknowledged, and in consideration of the royalties hereinafter agreed to be paid, the First Parties hereby sell, assign and transfer unto the Second Party the full and exclusive right to said invention, as fully set forth and described in the specifications accompanying said application for patent, and said First Parties hereby authorize and request the Commissioner of Patents to issue the said Letters Patent to the Second Party as assignee of all of the First Parties' right, title and interest in and to the same, and the First Parties hereby further agree to execute and deliver to the Second Party all such further instruments, writings or assignments as may be necessary to effect the issuance of said patent to the Second Party;

"In consideration of said transfer, the Second Party agrees to pay the First Parties the following respective royalties, all based upon the gross sales by said Second Party of said patented article, to-wit: 1% to Floyd Eyster; 1% to J. W. Wilkinson; and 4% to said Martin Fonken. Such royalties shall be paid on the 15th day of each month, upon which day the Second Party shall pay First Parties the royalties to which they are entitled upon all machines sold and delivered during the preceding calendar month; * * *." (Dep. Moline case, Deft. Ex. C attached thereto).

38. After the acquisition by plaintiff of the Fonken patent on July 25, 1942, Fonken, Wilkinson and Eyster on July 27, 1942, executed a "Quitclaim Assignment", reading as follows:

"Whereas, Fish Oven & Equipment Company, a corporation of Wisconsin, located at Beloit, Wisconsin, is the owner of the entire right, title and interest in and to United States Letters Patent No. 2,217,896 entitled 'Apparatus For Making Cinnamon Rolls And The Like issued October 15, 1940 upon application filed November 10, 1939, by the sole inventor thereof, the undersigned Martin E. Fonken, of Beloit, Wisconsin, and is desirous of conveying the entire right, title and interest in and to said letters patent and the invention or inventions thereof, to Interstate Bakeries Corporation, a Delaware corporation, having an office and principal place of business at Kansas City, Missouri, and said Interstate Bakeries Corporation is desirous of acquiring said entire right, title and interest;

"Now Therefore, in consideration of Ten Dollars ($10.00) and other good and valuable considerations to each of us in hand paid, the receipt and sufficiency of which is hereby acknowledged, we, the undersigned Martin E. Fonken, J. W. Wilkinson and Floyd E. Eyster, have agreed to and by these presents do hereby sell, assign and quitclaim unto said Interstate Bakeries Corporation, its successors and assigns, our entire right, title and interest in and to the

invention and inventions thereof, or any of them, and in and to said letters patent and extensions thereof, of the United States of America and countries foreign thereto, which have been or may be granted upon any said invention or inventions, and any divisional, continuing, renewal, reissue or other application based in whole or in part upon any said invention, together with the sole and exclusive right to have, sue for and recover any and all profits, damages, savings and royalties due or to accrue by reason of any infringement heretofore of said letters patent or any of them, and any and all license fees hereafter to be due with respect to any use of the invention or inventions of said letters patent, or of said letters patent, or any of them; hereby expressly surrendering all rights of the undersigned by reason of an agreement dated March 18, 1939 by and between the undersigned and said Fish Oven & Equipment Co.;

"And the undersigned agree, for themselves, their heirs and legal representatives, to execute without further consideration any further lawful documents and assurances, including any divisional, continuing or reissue application based on said letters patent or any of them which may be deemed necessary by said Interstate Bakeries Corporation, its successors or assigns, fully to secure to the latter its title and interest as aforesaid.

"In Witness Whereof, the undersigned have hereunto set their hands and seals this 27th day of July, 1942." (Pl. Ex. 16 in the Moline Case, a copy of which was received in this case upon reopening).

39. The "Heart"[2] of the Fonken Original and Reissue Patents is, and was, a spiraling cylinder or roller, disposed obliquely to the line of travel of an endless conveyor belt or apron and above and close to such belt or apron, upon which a continuous strip of dough is placed by sheeter rollers, the oblique cylinder or roller being driven in a direction opposing the direction of travel of the dough strip, the operation causing the dough to roll obliquely and to coil as it moves forward to the distal end of the roller. Fonken

did not invent the roller or process referred to above nor was he the first to conceive, use or disclose it to the public.

40. Fonken's conception for coiling dough to be used for making sweet rolls was a roller, ten or twelve feet long, which could be placed along the edge of a table upon which a strip of dough had been "pinned" or rolled so that an operator could pull the roller across the table and curl up the dough preparatory to cutting it into individual pieces, thereby eliminating the hand operation. He realized his conception was impracticable and it was never carried out. An oblique roller for the purpose of coiling a dough strip into an elongated, helical roll was conceived, reduced to practice and made use of by Floyd E. Eyster at least as early as January 1939 and used by Fonken in his application for a patent with the full knowledge and consent of Eyster. Eyster was not shown in the proceedings in the Patent Office to have invented, or contributed to the invention of, any apparatus or device nor was his conception shown in any drawings or applications filed in the Patent Office. It was never brought to the attention of the Commissioner of Patents or the examiners that Eyster had, in truth and in fact, conceived and reduced to practice the basic principle of the patent applied for by Fonken. (Fonken Dep. from Moline case, Page 33; Eyster Dep. from Moline case, Page 11, 19, 31; Pl. Ex. 70; Deft. Ex. I).

41. Martin E. Fonken was not the original and first inventor or discoverer of a material and substantial part of the device shown in the Fonken Original Patent in suit—viz., No. 2,217,896, granted October 15, 1940—nor of the device shown in the Reissue—viz., No. 22,399, granted December 7, 1943.

Conclusions of Law.

1. The evidence introduced upon the "Reopening", as shown following Finding 30, indicating prior knowledge, use and derivation of the alleged invention by Fonken, from Eyster, deprive the Fonken reissue patent No. 22,399 in suit of any

---

[2] The word "heart" is used by the parties at several places in their briefs and is used in the same sense here.

presumption of validity, since said evidence was not before the Patent Office when the patent was granted.

2. Fonken Reissue patent No. 22,399, and particularly claims 7, 11, 13 and 14 in suit, are invalid for lack of originality and invention by Fonken over Eyster's prior knowledge and disclosure to Fonken, in view of R.S. § 4886, 35 U.S.C.A. § 31.

3. Fonken Reissue patent No. 22,399 and particularly Claims 7, 11, 13 and 14 in suit are invalid because of knowledge and use of the alleged invention in this country by Eyster and others, before Fonken's alleged invention or discovery thereof, in view of R.S. § 4920, 35 U.S.C.A. § 69.

4. Cohen et al. Patent No. 2,383,774, Claim 7 in suit, is invalid for anticipation by, and lack of invention over, prior art patents in view of R.S. § 4886, 35 U.S.C.A. § 31, and R.S. § 4920, 35 U.S.C.A. § 69.

5. Claim 7 of Cohen et al. Patent No. 2,383,774 was not and is not infringed by defendant's device now in suit.

6. Plaintiff has not shown that it is entitled to an injunction against the making, use, sale or lease by the defendant of the device in suit and, that being the sole relief sought in the instant suit, the defendant is entitled to general judgment, together with its costs. Counsel for the defendant will prepare and submit appropriate form of judgment, to be settled in accordance with the Rules of Civil Procedure, 28 U.S.C.A., and the Rules of Practice of this Court.

## Opinion.

As indicated at the outset, plaintiff, the owner of the Fonken Reissue patent and the Cohen patent, charges that the device used by defendant infringes several claims in the former and one in the latter. The basic facts are not seriously in dispute. The defendant, in its answer and upon brief, makes many defenses. It would serve no useful purpose to set them all out in this opinion. Briefly, they are: (a) Invalidity of both patents for anticipation and lack of patentable invention; (b) invalidity of Fonken Reissue because it broadened the claims of the original patent long after the time permitted for broadening issues and without any excuse for the delay (D.Br. 6); and (c) infringement has not been established. In addition the defendant asserts: (d) that the "equitable defense" of "intervening rights under Sontag Chain Stores Co. v. National Nut Co., 310 U.S. 281, 60 S.Ct. 961, 84 L.Ed. 1204, and Webster [Electric] Co. v. Splitdorf Co., 264 U.S. 463, 44 S.Ct. 342, 68 L.Ed. 792", has been established, entitling it to a general judgment. By amendment to its answer nunc pro tunc upon the "Reopening", as indicated following Finding No. 30, the additional defense is interposed: (e) that the Fonken patent and reissue are invalid because the "heart of the invention, the oblique roller", was conceived by Floyd Eyster, rather than by Fonken. This defense is presented in two parts. It is asserted: (1) that Eyster's prior knowledge and use in itself renders the patent invalid; and (2) that inasmuch as the evidence discloses Fonken derived the claimed invention solely from Eyster's teaching, "lack of invention" or lack of originality has been established.

Counsel for both parties urge this court to pass upon all of the contentions made and defenses interposed, to the end that the appellate court may be fully informed as to its views in the event of an appeal. It is, of course, true that lower courts have been admonished the "better practice" is to inquire "fully into the validity of" the patent rather than to dispose of a suit such as this purely on the ground of noninfringement. Sinclair & Carroll Co. v. Interchemical Corporation, 325 U.S. 327, 65 S.Ct. 1143, 89 L.Ed. 1644; but this opinion would assume undue length if an attempt were made to discuss fully each question touched upon in the very complete and carefully prepared briefs of the parties. All, however, have been carefully considered. The conclusions reached indicate that the court has based its holding for the defendant primarily upon the defense made on the reopening—i. e. Findings 31 to 41 inclusive and the evidence upon which these findings are based. Before discussing this point at length, consideration will be given, at the risk of supererogation, to the questions discussed in the first set of briefs.

It is asserted by plaintiff, but denied by defendant, that the Fonken patent was "ba-

sic, pioneer and generic." Plaintiff's argument seems to be bottomed largely upon the oblique, coiling roller, characterized by it, at several places in its brief, as the "heart" of the invention. Adopting for the purpose of argument the same postulate, defendant insists that the Fonken patent was not the first disclosure of an automatic machine with an oblique roller, pointing out that Barker (Findings 20—23) had disclosed a similar device. Both parties, preceding the trial, made elaborate tests, designed to establish their respective theories that Barker disclosed, or failed to disclose, the basic principle of the oblique roller, as disclosed in the Fonken patent. Without attempting to summarize the evidence or to rationalize completely the conclusion reached, the court finds itself largely in accord with plaintiff's views. Barker was concerned with securing a device for molding and shaping pieces of dough for making bread—kneading them by gently pressing and squeezing them between rollers operated in reverse directions. True, the teaching tended to show a coiling or lifting of the dough by the operation of a roller; but it did not show nor suggest "a continuous strip of dough contacted intermediedly of its length", nor is the court convinced that it was capable of being so operated. Under the circumstances, therefore, the court is of the opinion that the Fonken patent should not be declared to be invalid on the basis of the prior art as disclosed by Barker. In this view it is unnecessary to pass specifically upon the soundness of plaintiff's contention that the validity of its original Fonken patent should be tested by the "greater degree of liberality" suggested by such cases as Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U.S. 405, 28 S.Ct. 748, 52 L.Ed. 1122, and Hildreth v. Mastoras, 257 U.S. 27, 42 S.Ct. 20, 66 L.Ed. 112. But this much may be said: the use of an oblique roller or spiraling cylinder to coil a strip of dough intermediedly of its length as it is moved forward on a conveyor seems, to this court, to be a new means and a new result, not taught by Barker, Humble, Kessler, Callow or the other patents cited by defendant as establishing the prior art.

The validity of the Fonken Reissue patent is the next major issue discussed by the parties. The applicable statute is shown in the margin.[3] Defendant assails the reissue upon two grounds: (1) That it broadened the claims of the original patent; and (2) that it did so long after the time permitted

3 "Reissue of defective patents; patents for separate parts

"Whenever any patent is wholly or partly inoperative or invalid, by reason of a defective or insufficient specification, or by reason of the patentee claiming as his own invention or discovery more than he had a right to claim as new, if the error has arisen by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, the commissioner shall, on the surrender of such patent and the payment of the duty required by law, cause a patent for the same invention, and in accordance with the corrected specification, to be reissued to the patentee or to his assigns or legal representatives, for the unexpired part of the term of the original patent. Such surrender shall take effect upon the issue of the reissued patent, but in so far as the claims of the original and reissued patents are identical such surrender shall not affect any action then pending nor abate any cause of action then existing, and the reissued patent to the extent that its claims are identical with the original patent shall constitute a continuation thereof and have effect continuously from the date of the original patent. The commissioner may, in his discretion, cause several patents to be issued for distinct and separate parts of the thing patented, upon demand of the applicant, and upon payment of the required fee for a reissue for each of such reissued letters patent. The specifications and claims in every such case shall be subject to revision and restriction in the same manner as original applications are. Every patent so reissued, together with the corrected specifications, shall have the same effect and operation in law, on the trial of all actions for causes thereafter arising, as if the same had been originally filed in such corrected form; but no new matter shall be introduced into the specification, nor in case of a machine patent shall the model or drawings be amended, except each by the other; but when there is neither model nor drawing, amendments may be made upon proof satisfactory to the commissioner that such new matter or amendment was a part of the original invention, and was omitted from the specification by inadvertence, accident, or mistake, as aforesaid. R.S. § 4916; May 24, 1928, c. 730, 45 Stat. 732." 35 U.S.C.A. § 64.

for broadening reissues and without any excuse for the delay.

The court has made, generally, the findings requested by the plaintiff (Findings 10 and 12) that the errors to be corrected in the reissue had arisen "by inadvertence, accident or mistake, and without any fraudulent or deceptive intention." Findings have also been made—somewhat evidentiary in character (Findings 13, 14 and 15)—embodying oaths and other evidence relied upon by the defendant as establishing the facts thought to show a broadening of the claims. Some discussion seems to be appropriate.

The principal changes alleged by the defendant to have broadened the claims of the original patent consist of the elimination of the second roller and the injection of a "range of angles" for the coiling roller, first mentioned specifically in Claims 13 and 14 of the reissue. Fonken's oath (Finding 13) and the proceedings in the patent office (Ex. 70) indicate that the claims were "unduly limited to a pair of oblique rollers or equivalent means for operating upon the dough strip twice", whereas the principal object of the second roller was to return the coiled dough strip to approximately the longitudinal center line of the conveyor. This finds some support in the original patent, wherein the use of the second roller is stated to be "desirable", rather than necessary. In the argument to the patent office United States Industrial Chemicals, Inc., v. Carbide & Carbon Chemicals Corp., 315 U.S. 668, 62 S.Ct. 839, 86 L.Ed. 1105 was cited as supporting the view that the disclosures of the original and reissue were for the same invention, "desirable" suggesting "optional" or "non-essential" rather than absolutely necessary and this view seems to have been adopted by the patent office. The new claims 13 and 14—see finding 17—were therefore added, showing but one oblique roller. This court cannot hold, as a matter of law, that the patent office erred in allowing Claims 13 and 14 or that they are invalid because broader than the claims indicated in the original patent.

The next subdivision of the question arising on the reissue is more difficult. The statute prescribes no time limit within which application for a reissue may be filed. In Miller v. Bridgeport Brass Co., 104 U.S. 350, 26 L.Ed. 783, and Mahn v. Harwood, 112 U.S. 354, 5 S.Ct. 174, 179, 6 S.Ct. 451, 28 L.Ed. 665, the court declined to lay down any "invariable rule * * * as to what is reasonable time within which the patentee should seek for the correction of a claim which he considers too narrow." By analogy to the statutory period of two years within which an inventor must apply for a patent after it has been publicly used, a delay of more than two years was held to make the patent void "so far as the new and expanded claims are concerned." Learned counsel for the defendant suggests, and indeed some courts may have held,[4] that since the amendment[5] of the statute reducing the two-year period after public use to one year, by the same analogy it should be held that the time within which an application for reissue, such as the one now before the court, can be filed and acted upon, is one year. This court, however, is not convinced that a one-year period should be adopted as a rule of thumb and chooses rather to inquire whether there was such unreasonable delay in making the application for reissue as to amount to laches.

In Finding No. 12 some of the "special circumstances" relied upon by the plaintiff as justifying the delay in filing the application for reissue are set out. They need not be repeated at this juncture. Allowing what the Supreme Court alluded to in Mahn v. Harwood, supra, 112 U.S. at page 361, 5 S.Ct. at page 178, as "a proper liberality in favor of the patentee", this court is of the opinion, and now holds, that there was not such unreasonable delay in making the application for reissue in this case as to amount to laches. It follows, therefore, that the reissue patent was not invalid merely because not applied for within one year. Cf. Topliff v. Topliff, 145 U.S. 156, 12 S.Ct. 825, 36 L.Ed. 658. This view finds some support in Application of Croskey et al., 165 F.2d 797, 35 C.C.P.A., Patents, 864, an opinion by the

---

4 Cf. Ryder v. Coe.*

5 Act of August 5, 1939, c. 450, § 1, 53 Stat. 1212, Title 35 U.S.C.A. § 31.

* No opinion for publication.

Court of Customs and Patent Appeals, decided January 6, 1948.

■ The equitable defense of "Intervening Rights" is somewhat interwoven with the question just discussed and has particular reference to Claims 13 and 14 of the Reissue Patent. It is stated thus by the defendant upon brief:

"In the present case, plaintiff's delay occurred after, as well as before, filing the reissue application, with respect to claims 13 and 14 in suit, which are the only claims added by the reissue. The reissue application as filed contained claims numbered 13, 14, 15 and 16 which said nothing about the angularity of the oblique coiling roller, containing no such phrases as 'substantially more nearly in the direction of movement of the conveyor than in a direction at right angles to said movement.' These four claims were all rejected by the Patent Office as indefinite or as met by Barker 208,197 or the Humbel prior art patent and were all cancelled by plaintiff. On May 21, 1943 plaintiff for the first time inserted in one of these claims the phrase regarding angularity quoted above. Again the Patent Office rejected the amended claim and on October 21, 1943 the plaintiff cancelled it and finally inserted in the reissue application the present reissue claims 13 and 14.

"Claims 13 and 14 were therefore delayed in their presentation until more than three years after the issue of the original Fonken patent on October 15, 1940. The phrase describing angularity was never present in the application in any way until the amendment of May 21, 1943, much more than two years after the issuance of the original Fonken patent. Thus the plaintiff is charged with a delay of more than two years in introducing, into the reissue, claims at all comparable in description and scope with these two reissue claims.

"During the period of this delay, defendant entered the field and acquired intervening rights on October 19, 1942 and extended its option and completed a second machine by March 1, 1943. It was not until after the latter date that plaintiff described

or claimed any range of angularity or presented claims 13 and 14."

Defendant has stipulated[6] that it does not rely, in this connection, upon any acts occurring prior to October 19, 1942, the date upon which it acquired rights ultimately disclosed in the Grimm et al. patent. (Finding 18). The application for reissue was filed August 22, 1942, at which time it included Claim 15, subsequently rejected, but which, nevertheless, definitely showed that the patentee and his assignees were claiming a single oblique roller machine. It should also be kept in mind that the Fonken patent, as mentioned above, while it disclosed two rollers, had specified that the second was merely "desirable"—not, therefore, absolutely necessary. This seems to have been the view of the patent office in granting the reissue after having raised the question on January 3, 1943 whether "applicant intended to claim the dough rolling roller per se or that the second roller could be dispensed with." (Pl. Ex. 70, P. 33).

While the question is not free from doubt, the court is of the opinion it should be resolved in favor of the plaintiff. This conclusion must, of course, rest upon the initial assumption that there was not a real "broadening" of the claims of the original patent. The principal case relied upon by defendant is Sontag Chain Stores Co. v. National Nut Co., supra [310 U.S. 281, 60 S.Ct. 967]. While in that case the Supreme Court held that recapture within two years of what a patentee has dedicated to the public should not be permitted "at the expense of innocent parties", it also adverted to the constructive notice which "goes * * * to all the world" from the recording of the patent in the Patent Office. Fonken's testimony touching upon the sufficiency of the one roller, especially that appearing on P. 242 et seq. of the transcript, lends but slight support to this court's conclusion that the second roller was not necessary and that its elimination and the adoption of a specification providing for but one roller was not a real departure or broadening. Other circumstances, however, and especially the language in the original patent, support the court's view.

---

[6] Paragraph 8 Stipulation.

■ The contention of the defendant that Claims 13 and 14 injected new matter in providing for angularity of the coiling roller, long after defendant had begun the use of its alleged infringing device, and a kindred contention that the "new matter" should have been supported by a "Supplemental Oath" are, in this court's judgment without substantial merit. As previously pointed out, the original application for reissue, filed before the date defendant acquired any rights under the Grimm device, indicated applicant was claiming angularity of the roller, as allowed in the two claims. The ultimate redrafting and rephrasing into what became these two claims seems to have been largely a matter of terminology. Moreover, the substance of each of the claims was also indicated in the original Fonken patent and drawings. A "Supplemental Oath" seems to be required under the rules of the Patent Office, Rule 48, Rules of Practice, 35 U.S. C.A.Appendix, when "a claim for matter * * * not substantially embraced in the statement of invention or claim originally presented" is made. Cf. Glade v. Walgreen Co., 7 Cir., 122 F.2d 306. The sufficiency of the oath submitted with the application for Reissue was questioned by the Patent Office (Pl. Ex. 70, p. 23), which was also concerned with whether the original patent disclosed a single oblique roller device. (Pl. Ex. 70, p. 39, Finding 14) Both questions were resolved in the manner urged by the applicant and the Reissue was granted. This court cannot find that the action taken by the Patent Office was erroneous. Moreover, it is reasonable to conclude that the Patent Office correctly interpreted its own rule.

The Cohen Patent, Claim 7 of which is alleged to have been infringed by defendant, (Finding 19) remains to be considered. It is assailed by the defendant as invalid because anticipated by the Barker Patents (Findings 20–22), by the Fonken original and Reissue and by other prior art patents. Infringement is also denied. Upon brief defendant says:

"In simpler language, plaintiff's own contention is that Cohen merely borrowed from Fonken and added (1) a pivotal bearing for the coiling roller so that its angle can be changed, and (2) a bracket for the roller mounted on both sides of the belt and high enough to allow the elongate coil of dough to pass around the end of the roller."

While the court hesitates to adopt categorically the quoted, terse statement, it seems to be rather "close to the mark." Examination of the patent jacket (Dft. Ex. J.) shows that the attorney attempted to support Claim 7 and to distinguish it from other cancelled Claims by stating:

"* * * it is believed to be more definite in terminology and more clearly distinguished in terms as well as in substance from the structures of Barker and Fonken, neither of which shows or suggests a rotatable shaft mounted at its distal end on a bracket carried by the support within the vertical projection of the conveyor, together with the novel provision of a passageway under the bracket for passing the coiled dough around and beyond the distol end of the shaft. Barker is a foreign reference and Fonken is owned by owners of the present application.

"Fonken * * * shows no support for the distal end of the roller and even if it were considered obvious to modify Fonken as taught by the present application that would not produce applicants' result and including an oblique bracket within the vertical projection of the conveyor and a passageway under the bracket for the coiled dough, permitting the dough to pass around and beyond the end of the shaft." (p. 64).

The claim seems to have been allowed on the basis of the argument shown (Pl. Ex. J., p. 66) and upon application of the rule frequently applied in patent matters where the applicant is the owner of one of the patents shown in the prior art, the rule having been quoted in the remarks of counsel (Paper No. 6/c Dft. Ex. J., p. 51) from In re Hollander et al., 50 U.S.P.Q. 393 as follows: "Claims which do not read on the patents or record, but distinguish therefrom by differences of material importance, should be allowed, particularly where it appears from the brief that the reference patents are owned by appellants' assignee so that there would seem to be

no reason why appellants should be attempting to draw claims that would read on such references."

■ The court is of the opinion and now holds that Cohen Claim 7, insofar as it relates to a rotatable shaft or roller "in the path of the dough strip and extending more nearly in the direction of movement of the conveyor than at right angles thereto," was merely borrowed from Fonken, Eyster, Barker and others, performed no new function and was definitely shown by the prior art. Then, too, more is clearly claimed than the applicants invented. Cf. Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008. The drawings suggest, and the proceedings in the Patent Office indicate, that, at most, the applicant merely added a pivotal bearing for the coiled roller so that its angle could be changed and provided an arcuate track mounted on both sides of the conveyor. The claim, therefore, seems to be invalid; but if the court has erred in so holding, no infringement has been shown.

The question of "Intervening Rights", discussed again by defendant in connection with the Cohen Patent, has substantial merit. The claim relied upon (Claim 7, Finding 19) was not made until more than a year after defendant had entered the field and after it had written plaintiff, advising it was making and using the Grimm et al. machine. The delay seems to have been unreasonable and such as to deprive the claim of any validity under the rationale of Wollensak v. Reiher, C.C., 115 U.S. 96, 5 S.Ct. 1137, 29 L.Ed. 350, and Webster Electric Co. v. Splitdorf Co., supra. But since the court has previously held that the patent is invalid upon other grounds and no infringement has been shown, this question need not be labored.

The issue of infringement of the Fonken Reissue patent may appropriately be considered at this juncture. Learned counsel for the defendant admitted in his opening statement, (Tr. 272) that the alleged infringing device has a "traveling conveyor adapted to move a flat dough strip in a longitudinal direction; a roller rotatable in a direction opposed to the direction of travel of said conveyor, said roller disposed obliquely over the edge of the conveyor and adapted to coil the dough strip into an elongate helical roll that is discharged from said roller adjacent a margin of the conveyor", which, it is clear, is shown in Fonken's Claim No. 7 and substantially the same by No. 11. But, says counsel, defendant's device has nothing equivalent to the "second roller adapted to move the elongate roll of dough to the midportion of the conveyor" (Claim 7), or "means adapted to change the movement of the coiled dough in an oblique direction opposite the first oblique movement" (Claim 11). It was also stated: "Our coiled dough comes down to one margin and is there cut off, is never moved back over the belt to the middle, diagonally or any other way, and even the fragments of dough pieces which are certainly not what the inventor meant, don't change to an oblique direction, but go off in a straight line along the belt."

■ The admissions and argument suggests this question: "Does the elimination of one element, incidental to the Fonken patent, absolve the defendant from a charge of infringement?" Assuming a valid patent—contrary to the holding this Court has made—and one which is "basic, pioneer and generic", the cases cited in the margin [7] seem to dictate that a negative answer should be made to the question posed; for one may not adopt the "heart"—the principal feature—of an invention and avoid infringement by showing a minor variation. The rule relied upon by the defendant, stated thus by Judge Phillips speaking for the Court in Jensen-Salsbery Laboratories, Inc., v. O. M. Franklin Blackleg

[7] Machine Co. v. Murphy, 97 U.S. 120, 123, 24 L.Ed. 935; Tilghman v. Proctor, 102 U.S. 707, 26 L.Ed. 279; Clough v. Barker, 106 U.S. 166, 1 S.Ct. 188, 27 L.Ed. 134, or is patented; Atlantic Works v. Brady, 107 U.S. 192, 200, 2 S.Ct. 225, 27 L.Ed. 438; Cantrell v. Wallick, 117 U.S. 689, 6 S.Ct. 970, 29 L.Ed. 1017; Morley Sewing Mach. Co. v. Lancaster, 129 U.S. 263, 9 S.Ct. 299, 32 L.Ed. 715; Hoyt v. Horne, 145 U.S. 302, 12 S.Ct. 922, 36 L.Ed. 713; Potts v. Creager, 155 U.S. 597, 15 S.Ct. 194, 39 L.Ed. 275; Hobbs v. Beach, 180 U.S. 383, 21 S.Ct. 409, 45 L.Ed. 586; Tempco Electric Motor Co. v. Apco Mfg. Co., 275 U.S. 319, 48 S.Ct. 170, 72 L.Ed. 298.

Serum Co., 10 Cir., 72 F.2d 15, 18: "Every element of a combination or step in a process claimed is conclusively presumed to be material. The omission of one element, ingredient, or step of a combination claim avoids infringement of that claim, whether or not the omitted element, ingredient, or step was essential to the combination." must be limited to combination patents. Other cases applying the same rule are shown in the margin.[8]

As earlier indicated and notwithstanding the discussion of the several contentions which the court has made, it has been irresistibly impelled to reach the conclusion that plaintiff's prayer should be denied and general judgment should be entered in favor of the defendant on the basis of the evidence brought onto the record in connection with the reopening. The facts are fully set out—doubtless at undue length—in findings 31 to 41 inclusive and need not be repeated. Before discussing them and the evidence upon which they are based it is but fair to state that they were—quite properly, it is believed—called to the Court's attention by learned counsel for the plaintiff, although known to be inimical to their client's interest. Cf. Precision Instrument Mfg. Co. v. Automotive Co., 324 U.S. 806, 65 S.Ct. 993, 89 L. Ed. 1381.

The amended answer alleges, inter alia, that the Reissue patent is void because Fonken "was not the original and first inventor"; that prior to his alleged invention it, and every part thereof, was known to and used by patentees named in other letters patent "and by Floyd Eyster of and at Rockford, Illinois"; and that Fonken "surreptitiously or unjustly obtained * * * letters patent for that which was in fact invented by others", "prior conception and knowledge of the alleged invention [having been made] by Floyd Eyster of Rockford, Illinois." While these allegations have been denied by the plaintiff the substance thereof, and particularly the portion establishing conception, knowledge and use by Eyster, has been proved. The question is, therefore, largely one of law.

The statutes[9] contemplate and require that the patentee be the "first inventor" and that his device "not [be] known or used by others in this country, before his invention or discovery thereof * * *." Cf. United Chromium v. General Motors Corporation, 2 Cir., 85 F.2d 577. The facts found show prior knowledge or use and actual invention by Eyster of the oblique roller. Thus both defenses urged upon brief seem to have been established—first, that the patent is invalid because Fonken has not been shown to have "invented or discovered any new and useful * * * machine * * * or any new and useful improvements thereof"; and second, lack of invention or of originality has been shown since Fonken merely took Eyster's idea, as shown in the "Proof of Development" (Finding 33), and made it the "heart" of his machine.

In finding 39 and the footnote thereto the use of the word "heart" has been commented upon. Illustrative of its use by plaintiff is the argument on pp. 66-67 of its opening brief where, in discussing infringement by "appropriating the essential teachings of the Fonken patent", it is urged that "the main features of both machines [the Fonken and the accused device] are the same structure, the oblique roller, the heart of the Fonken invention, has been appropriated by defendant." But regardless of the use of the term by plaintiff, this court thinks that it not wholly inapropos, suggesting, as it does, the conclusion which has been reached, that the use of the oblique roller was generic.

But to return to the question. No case has been cited or found precisely "on all

[8] Oliver United Filters, Inc. v. Eimco Corporation, 10 Cir., 91 F.2d 345; and Band-it Co. et al. v. McAneny, 10 Cir., 131 F.2d 766, certiorari denied 318 U.S. 773, 63 S.Ct. 770, 87 L.Ed. 1143, rehearing denied 318 U.S. 803, 63 S.Ct. 980, 87 L.Ed. 1166; Hildreth v. Mastoras, 257 U.S. 27, 42 S.Ct. 20, 66 L.Ed. 112.

[9] R.S. § 4886, March 3, 1897, c. 391, § 1, 29 Stat. 692, May 23, 1930, c. 312, § 1, 46 Stat. 376, Aug. 5, 1939, c. 450, § 1, 53 Stat. 1212, Title 35 U.S.C.A. § 31. R.S. § 4920, Fourth, March 3, 1897, c. 391, § 2, 29 Stat. 692, Aug. 5, 1939, c. 450, § 1, 53 Stat. 1212, Title 35 U.S.C. A. § 69.

fours" with the case at bar. Both parties cite and discuss Alexander Milburn Co. v. Davis Bournonville Co., 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651. Plaintiff relies upon the portion of the opinion beginning at the bottom of page 399 and continuing on page 400 of 270 U.S., on page 324 of 46 S.Ct. wherein it is stated that the words of the fourth defense—that the patentee was not the original and first inventor—should not be taken "in their natural sense as they would be read by the common man." It was there pointed out that such a construction might bar a patentee if some one could establish a description of the device had been previously written out and kept "in his portfolio uncommunicated to anyone"; also that it is not necessary for the patent office to make search among abandoned patent applications. Defendant argues, however, that the quoted passage was included merely to state the supposed analogy which had "prevailed in the minds of the courts below", and that, by the reversal, the court actually held that even an unpatented application which should, but did not, claim the invention, was proof of prior knowledge and hence lack of first invention by the patentee. The last full paragraph appearing on page 401 of the opinion in 270 U.S., on page 325 of 46 S.Ct., in this court's judgment, supports the conclusion urged by the defendant.

Manifestly the language used by the court in the cited case should be warily applied here; for the facts are not analogous. Eyster made no application for a patent on his device, as was done in the cited case, nor was a description of it published in a printed application. But the evidence clearly shows, and it has been found as a fact, that Eyster conceived and reduced to practice the basic principle of the patent applied for by Fonken (Finding 40) and that Fonken did not invent it and was not the first to conceive, use or disclose it to the public. (Findings 39 and 41). At the risk of extending this, already too long, opinion unnecessarily, some of the evidence supporting the findings and conclusions reached will be set out.

The "Proof of Development", (Finding 33) shows that "a machine, in working model, conceived by Eyster, and designed for the curling" of sweet rolls in substantially the same manner as described in the Fonken patent, was exhibited before, and operated by Eyster in the presence of five witnesses in January 1939. The "agreement" executed by Fonken and Eyster, dated January 31, 1939, (Finding 35) recited that "It is agreed that the party of the second part [Eyster] has in his possession a device conceived and produced, or constructed by the party of the second part, and described in a sealed letter of protection produced by the party of the second part, before witnesses on the date of production of the device described in the body of this agreement." The document states that it was agreed the device referred to "was conceived and produced in a working model" by Eyster. It then describes Eyster's machine and authorizes Fonken "to negotiate for the acceptance of the plans and model by any corporation, partnership, or individual for placement of the device in production, and on the market as a salable item, fully protected with the rights of * * * [Eyster] unimpaired." In conclusion it states that "the principle and method of curling rolls" remains the property of Eyster. Fonken, in the deposition taken on October 20, 1947, during the direct examination, said that Eyster showed him the curling rollers and held them over the conveyor to indicate how they would work.

"A. And I knew immediately that my problem was solved.

"Q. 257. Which problem are you speaking about? A. The problem of coiling the sweet dough."

On the face of the record, therefore, it seems clear that Fonken was not the original or first inventor—or for that matter not the inventor at all—of the principle which it is contended he really brought into the art. Indeed the veracity of Fonken in subscribing to an oath stating "that he verily believes himself to be the original first and sole inventor of the improvement" and "that he does not know and does not believe that the same was ever known or used before his invention or discovery thereof, or patented or described in any printed publication in any country before

his invention or discovery thereof" is open to serious question. (Ex. I, p. 21.).

There next appears in the record (Finding 37) "Articles of Agreement", signed March 18, 1939, between Fonken, Wilkinson and Eyster, as "First Parties", and Fish Oven and Equipment Company, as "Second Party" which states: "the First Parties have conceived and are now perfecting a certain device for use in curling dough into" sweet rolls. As consideration for the agreement, designated royalties, "based upon gross sales by Second Party", were to be paid. Also, Fonken, Wilkinson, and Eyster, on July 27, 1942, voluntarily executed a sworn document, selling, assigning and quit-claiming to the plaintiff, their "entire right, title and interest" in and to the invention and patents now in question. The "quitclaim assignment" was apparently drawn in an effort to perfect the title to those interests in the plaintiff, which was then in the process of purchasing them from Fish Oven and Equipment Company. That document, while it is signed by all three men, recites that Fonken was "the sole inventor" of the device patented by Letters Patent No. 2,217,896. (Plaintiffs' Ex. 16 in the Moline Case).

■ In this posture plaintiff argues on brief that "While Eyster abandoned inventorship to Fonken, he did not abandon the invention to the public." But the question is thereby raised as to whether an original or first inventor, after once asserting his accomplishments, can, under the law, waive or abandon his rights to a patent to another. The Supreme Court, in Kennedy v. Hazelton, 128 U.S. 667, 672, 9 S.Ct. 202, 32 L.Ed. 576, stated categorically that "a patent which is not supported by the oath of the inventor, but applied for by one who is not the inventor, is unauthorized by law, and void, and whether taken out in the name of the applicant or any assignee of his, confers no rights as against the public." The primary purpose of our patent system is not reward of an individual, even the one who actually conceived the necessary substantial innovation, but rather the advancement of the arts and sciences. It is not a certificate of merit, but an incentive to disclosure. Sinclair & Carroll Co. v. Interchemical Corp., 325 U.

S. 327, 330–331, 65 S.Ct. 1143, 89 L.Ed. 1644. Furthermore, it seems quite doubtful that Eyster "abandoned inventorship to Fonken". On the contrary, the steps which were taken to preserve documentary evidence showed that he considered himself the originator of the "curler" and that he wished to guard that priority zealously.

■ The fact that Eyster knew Fonken was going to apply for a patent and did not object thereto or take any steps to prevent the issuance of a patent to him, does not, in this court's judgment, validate Fonken's otherwise false claim of inventorship. "The possession and assertion of patent rights are 'issues of great moment to the public'" and can be recognized only upon full compliance with the procedure outlined by the statute. "As recognized by the Constitution, it [a patent] is a special privilege designed to serve the public purpose of promoting the 'Progress of Science and useful Arts.' At the same time, a patent is an exception to the general rule against monopolies and to the right to access to a free and open market. The far-reaching social and economic consequences of a patent, therefore, give the public a paramount interest in seeing that patent monopolies spring from backgrounds free from fraud or other inequitable conduct and that such monopolies are kept within their legitimate scope." Precision Instrument Mfg. Co. v. Automotive Co., supra, 324 U.S. at page 816, 65 S.Ct. at page 998, 89 L.Ed. 1381. The intent is that a patent should protect the invention or discovery only if applied for by the first inventor. Kennedy v. Hazelton, supra. The public grants the patent, if applied for, to the first inventor only; and a patent which credits some one else with the invention confers no rights against the public and does not authorize the purported patentee to tax the industry of the country for that which was actually contributed to the advancement of the arts by the prior conception by another. Apparently Eyster did not choose to patent his device. While the evidence indicates that this attitude may have been animated by a lack of financial success on a patent issued to him on an earlier development, viz., a pump, the reason is immaterial. The public offers the

114

monopoly of a patent to the first inventor, only; and if he does not avail himself of it the development belongs to the public.

The following cases, in addition to those heretofore cited, it is believed, lend strong support to the conclusion the court has reached. Agawam Woolen Co. v. Jordan, 7 Wall. 583, 19 L.Ed. 177; Collar Co. v. Van Dusen, 23 Wall. 530, 23 L.Ed. 128; George Franke Sons Co. v. Wiebke Mach. Co., Inc., D.C., 2 F.Supp. 499; and International Carrier-Call & Television Corp. v. Radio Corp., 2 Cir., 142 F.2d 493 and cases therein cited. Plaintiff's prayer for relief is denied and general judgment will be entered for the defendant.